IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RODNEY R. PERRY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:18-cv-00753-P |
| PENNYMAC LOAN SERVICES LLC, | § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodney Perry originally brought this case state court, alleging that Defendant PennyMac Loan Services LLC failed to perform on a mortgage loan modification agreement. Defendant removed the matter. Before the Court are Defendant's Motion for Summary Judgment (ECF No. 14), filed April 25, 2019; Plaintiff's Response (ECF No. 22), filed May 20, 2019; and Defendant's Reply (ECF No. 24), filed June 7, 2019. Having considered the motion, related briefing, and applicable law, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 14) should be and is hereby **GRANTED**.

## I. BACKGROUND

The following undisputed facts are taken largely from Plaintiff's Original Petition and Defendant's Appendix in Support of its Motion for Summary Judgment. *See* Def.'s Not. Removal Ex. C-2 (Or. Pet.), ECF No. 1-5; *see also* Def.'s App. Supp. Mot. Summ. J., ECF No. 15. Plaintiff Rodney R. Perry ("Perry") owns and resides in real property located

1

at 352 Wishbone Lane, Fort Worth, Texas 76052. On or about June 30, 2014, Perry executed a Note secured by a Deed of Trust (collectively, the "Loan") covering the property, for the benefit of Universal American Mortgage Company, LLC. The Loan was subsequently sold, assigned, or transferred. Defendant PennyMac Loan Services, LLC ("PennyMac") is now the mortgage servicer of the original $137,410.00 loan, as well as the beneficiary of the Deed of Trust by assignment.

At some point after the transfer, Perry requested loss mitigation assistance from PennyMac. PennyMac agreed to consider Perry for a loan modification. So, Perry submitted an official loss mitigation application to PennyMac in February 2018. PennyMac then approved Perry for a loan modification trial period plan. Perry completed all payments under that plan and requested a permanent loan modification. PennyMac approved Perry for a modification and offered him a permanent Loan Modification Agreement (the "Agreement") on May 21, 2018. To accept the Agreement, Perry was required to sign and return it to PennyMac on or before June 12, 2018. The Agreement stipulated that if Perry failed to accept on time, his silence would be interpreted as a denial of PennyMac's offer. Perry failed to return the Agreement on time.

On July 19, 2018, PennyMac sent Perry a denial letter explaining that the modification could not be finalized because Perry failed to accept their offer. On July 28, 2018, Perry returned a partially executed copy of the Agreement to PennyMac. PennyMac refused—and still refuses—to honor the signed Agreement because Perry sent it late. Now, Perry's loan is due for past payments and PennyMac has threatened to foreclose on the property. On August 30, 2018, Perry filed this lawsuit in the 96th Judicial District Court of

Tarrant County, Texas, and obtained a temporary restraining order preventing foreclosure. On September 12, 2018, PennyMac removed the action to this Court.

## II. LEGAL STANDARD

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

## III. ANALYSIS

Perry asserted two claims in the original petition. *See* Not. Removal. Ex. C-2. (Original Petition), ECF No. 1-5. First, that PennyMac violated the Real Estate Settlement Procedures Act's ("RESPA") written notice requirement when it denied the permanent loan

3

modification. *Id*. at 4. And second, that PennyMac breached the trial payment plan because it (1) accepted all of Perry's payments under the plan but (2) did not permanently modify Perry's loan at the end of the trial period. *Id*. at 5. PennyMac moves for summary judgment on both of Perry's claims. *See* Def.'s Mot. Summ. J., ECF No. 13. The Court examines each claim in turn.

## A. RESPA Claim

PennyMac argues it is entitled to summary judgment on Perry's RESPA claim because PennyMac did, in fact, provide Perry RESPA-compliant written notice after reviewing his loss mitigation application. Def.'s Br. Supp. Mot. Summ. J. 4, ECF No. 16. Perry responds by arguing "the evidence establishes the Plaintiff never received any of the required notices." Pl.'s Resp. 3, ECF No. 22. PennyMac replies by (1) reiterating that it mailed the required notices to Perry and (2) arguing that Perry cannot show he incurred damages, which are required to bring a RESPA claim. Def.'s Reply 2–5, ECF No. 24.

### 1. PennyMac's Written Notice

RESPA is codified in Title 12 of the Code of Federal Regulations. Section 1024.41 sets out RESPA's loss mitigation procedures, including the written notice requirement. Perry focuses his arguments on section (d) which states, in pertinent part:

> If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower…a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option…

12 C.F.R. § 1024.41(d). Here, PennyMac clearly communicated with Perry after he submitted his loss mitigation application. *See* Def.'s App. Supp Mot. Summ. J. Ex. A-2

4

(Modification Trial Plan, dated February 13, 2018), ECF No. 15; *Id*. Ex. A-3 (Modification Agreement, dated May 21, 2018). In fact, PennyMac notified Perry that he had been *approved* for permanent loss mitigation and offered him a permanent loan modification in the Agreement. *Id*. So what Perry is *actually* arguing is that he was entitled to additional written notice after *he* failed to accept PennyMac's offer on time.[1] *See* Pl.'s Resp., ECF No. 22. Unfortunately for Perry, section 1024.41 "does not cover duplicative requests when 'the servicer has previously complied with the requirements of [the] section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application.'" *Solis v. U.S. Bank, N.A.*, 726 Fed. Appx. 221, 223 (5th Cir. 2018); *see also Ruiz v. PennyMac Loan Services, LLC*, 2018 WL 4772410, at *2 (N.D. Tex. 2018). And here, the undisputed facts indicate Perry was, in fact, delinquent on payments after he completed the trial payment plan and received notice that his first application had been approved. *See* Def.'s App. Supp. Mot. Summ. J. Ex. A-5 (Modification Denial Letter), App. 39–40, ECF No. 15 ("We are not considering your request for a Modification because after being offered a…Modification you notified us that you did not wish to accept the offer." But "[w]hile we are unable to offer you a loan modification, there are other alternatives to foreclosure which may be available to you."); *Id*. Ex. D-1(Plaintiff's Responses to Requests for Admission) at App. 72 (Wherein Perry admits he failed to make loan payments in both 2018 and 2019).

---

[1] Additionally, PennyMac argues that it *did* provide Perry with such a notice, even though Perry was the party who declined the offer. *See* Def.'s App. Supp. Mot. Summ. J. Ex. A-5 (Modification Denial Letter), App. 39–40, ECF No. 15.

## 2. Perry's Effective Denial

Yet Perry's claims are undermined by deeper flaws. Perry's core argument rests on the idea that PennyMac owed him a notice of denial after he failed to sign and return the Agreement. But the Agreement itself provided notice that if Perry failed to return it, or otherwise communicate with PennyMac within 21 days, PennyMac would interpret such failure as a denial of their offer. Perry returned the Agreement more than a month late. *See* Def.'s App. Supp. Mot. Summ. J. Ex. A-4 (Partially Executed Modification Agreement), ECF No. 15. Ironically, this means Perry expected a denial notice from PennyMac after *he effectively denied* PennyMac's loan modification offer. Perry fails to consider RESPA section 1024.41(e)(1), which covers borrower responses to loss mitigation options. That section states:

> if a complete loss mitigation application is received 90 days or more before a foreclosure sale, a servicer *may require that a borrower accept or reject an offer of a loss mitigation option* no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower.

12 C.F.R. § 1024.41(e)(1) (emphasis added). Here, PennyMac provided notice 90 days or more before a foreclosure sale and required Perry to accept or reject their offer within 21 days. *See* Def.'s App. Supp. Mot. Summ. J. Ex. A-3 (Modification Agreement), ECF No. 15. Accordingly, PennyMac's acceptance requirements were proper. That said, PennyMac did go a step further by interpreting Perry's silence as a denial of the offer. Is that interpretation permissible under RESPA? The text of statute answers this question as well. Section 1024.41(e)(2)(i) provides:

> a servicer may deem a borrower that had not accepted an offer of a loss mitigation option within the deadline established pursuant to paragraph (e)(1) of this section to have rejected the offer of a loss mitigation option.

12 C.F.R. § 1024.41(e)(2)(i). So what Perry argues, perhaps inadvertently, is that PennyMac violated RESPA when it enforced an acceptance regime provided by the statute itself. *But see Aldridge v. Williams*, 44 U.S. (3 How.) 9, 24 (1845) ("The law as it passed is the will of the majority of both houses, and the only mode in which that will is spoken is in the act itself; and we must gather their intention from the language there used."). As counterintuitive as that argument may seem on its face, it is still PennyMac's burden to show Perry's claim fails as a matter of law.

### 3. PennyMac's Burden

To disprove Perry's arguments, PennyMac provides proof of: (1) the trial payment plan; (2) the Agreement; (3) the modification denial letter; and (4) Perry's late, partially executed copy of the Agreement. *See* Def.'s App. Supp. Mot Summ. J. Ex. A-2–5, ECF No. 15. Perry states that he received approval of the trial payment plan "[o]n or around February 13, 2018," and later "finally received the loan modification agreement and promptly signed it and sent it to Defendant on January 28, 2019."[2] Def.'s Resp. 2, ECF No. 22. Perry also argues he never received any of the notices required by RESPA. *Id.* at 3. Despite Perry's seemingly contradictory recollection of facts, the Court finds PennyMac has proven: (1) *both* the trial payment plan and the Agreement stated that returning an

---

[2] The January 28 date appears to be provided in error. It is factually impossible for Perry to have returned the document on this date. The Court assumes Plaintiff intended to submit *July* 28 as the applicable date. *See* Def.'s App. Supp. Mot. Summ. J. Ex. A-4 (Partially Executed Modification Agreement), ECF No. 15.

executed copy of the Agreement was a prerequisite to finalizing the loss mitigation plan; (2) PennyMac provided Perry with appropriate correspondence—which Perry received and later signed—after approving his loss mitigation application; (3) PennyMac did not otherwise fail to provide RESPA-compliant notice; and (4) Perry failed to plead actual damages.[3] *See* Def.'s App. Supp. Mot. Summ. J. Ex. A–D (Including the Note, Modification Trial Plan, Modification Agreement, Partially Executed Modification Agreement, Modification Denial Letter, and Plaintiff's Responses to Requests for Admission and Interrogatories) ECF No. 15; *see also* Def.'s Br. Supp. Mot. Summ. J., ECF No. 16. Based on the foregoing, the Court finds that PennyMac has satisfied its burden to show it complied with RESPA and is entitled to judgment as a matter of law on the RESPA claim. Accordingly, Defendant PennyMac's motion is **GRANTED** on this claim.

### B. Breach of Contract Claim

PennyMac argues it is entitled to summary judgment on Perry's breach of contract claim because: (1) it did not breach the trial payment plan; (2) the parties never executed the Agreement, so it cannot be breached; and (3) Perry sustained no damages. Def.'s Br. Supp. Mot. Summ. J. 6–7, ECF No. 16. Perry responds that because he tendered—and

---

[3] To state a RESPA claim based on deficient loss mitigation procedures, Perry "must show that he suffered *actual damages* as a result of [PennyMac's] violation" of § 1024.41. *Ruiz*, 2018 WL 4772410, at *2 (citing *Law v. Ocwen Loan Servicing, L.L.C.*, 587 Fed. Appx. 790, 795 (5th Cir. 2014) (per curiam). The Fifth Circuit has previously reasoned, albeit in an unpublished opinion, that no authority supports the "proposition that litigation fees and expenses are actual damages under RESPA" because "RESPA allows for fees and expenses *in addition* to actual damages." *Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 Fed. Appx. 833, 836–837 (5th Cir. 2014) (emphasis in original). Here, Perry did not plead actual damages, he pleaded only litigation fees and expenses.

PennyMac accepted—payments under the trial payment plan, PennyMac was obligated to permanently modify the loan. Pl.'s Resp. 2, ECF No. 22. And, because PennyMac did not do so, it breached the trial payment plan. In reply, PennyMac argues that Perry failed to do what was required of him in order to finalize the Agreement and make the loan modification permanent. Def.'s Reply 5–6, ECF No. 24.

    1.    Contract Terms

The elements of a breach of contract action are: "(1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) the plaintiff sustained damages as a result of the breach." *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 848 (Tex. 2018) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018)); *see also Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 834 (Tex. App.—Dallas 2009, no pet.) (citing *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995, no writ)). "To prevail on a claim for breach of contract, plaintiff must first show, *inter alia*, the existence of a valid contract between plaintiff and defendants." *Peoples v. BAC Home Loans Servicing, LP*, 2011 WL 1107211, at *3 (N.D. Tex. 2011) (citing *Frost Nat'l Bank v. Burge*, 29 S.W. 3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.). "This showing requires the plaintiff to prove '(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.'" *Id*. (quoting *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied). "Modification to a

contract, while permitted, may not be done unilaterally, but rather requires the assent of all the parties to the contract." *Id*.

Here, the Loan Modification Agreement PennyMac offered Perry stated:

> To accept this offer you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by 06/12/2018…If you do not send both copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified, Otherwise we will assume you are declining our loan modification offer.

Def.'s App. Supp. Mot. Summ. J. Ex. A-3 (Modification Agreement), App. 13, ECF No. 15. Neither party disputes that Perry failed to return the Agreement to PennyMac by the date listed in the contract.[4] Further, the Agreement he did return was incomplete. Perhaps realizing his mistake, Perry opts not to address the Agreement and instead argues PennyMac breached the *trial payment plan* by not finalizing the permanent loan modification. Pl.'s Resp 4, ECF No. 22. But as stated above, the Agreement pointed out that completing the trial payment plan alone did not guarantee Perry a permanent loan modification.[5] Instead, PennyMac offered Perry a modification that he was free to accept

---

[4] Perry does not address this issue. He argues only that he signed the agreement "promptly." *See* Pl.'s Resp. 2, ECF No. 22.

[5] Neither can Perry hide behind the terms of the trial payment plan itself. The plan warned Perry that signing and returning an Agreement is necessary to finalize a permanent loan modification. The trial payment plan provided:

> Once the Trial Payment Plan is successfully completed and the Modification Agreement is returned to PennyMac with all the appropriate signatures, we will modify your loan. **Your modification only become permanent after we receive the agreement**. *Until then continue making payments in the same amount you paid during the trial period*." (emphasis in original) (loan modification trial plan notice).

10

or deny by a certain date. Def.'s App. Supp. Mot. Summ. J. Ex. A-3 (Modification Agreement), ECF No. 15. Accepting that offer at his leisure and on his own terms was not presented as an option. *Id*. As such, the Court finds Perry cannot show "an acceptance in strict compliance with the terms of the offer." *Id*. (citing *Hubbard*, 138 S.W.3d at 481). Perry therefore cannot show a valid contract exists, which is a required element of the breach of contract claim. *See Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 260 (Tex. App.—Fort Worth 2018, no pet.). The Court finds PennyMac's motion should be and is hereby **GRANTED** on this claim.

2. Damages

Alternatively, even if Perry could show a valid contract exists, he cannot show a breach of that contract caused damages. "The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained." *Peoples v. BAC Home Loans Servicing, LP*, 2011 WL 1107211, at *4 (N.D. Tex. 2011) (McBryde, J.) (wherein the Court ruled that no damages were actually sustained because Plaintiff "remained in continuous possession and occupation of the residence, and title remain[ed] in her name."). Further, under Texas law, attorney's fees and other legal costs are not considered stand-alone damages. *See Satterfield and Pontikes Construction, Inc. v. United States Fire Insurance Co.*, 898 F.3d 574, 576 n.2 (5th Cir. 2018); *see also Doty v. Sun Life Assur. Co. of Canada*, 2009 WL 3046956, at *10 (S.D. Tex. 2009) ("[Plaintiff]

---

Def.'s App. Supp. Mot. Summ. J. Ex. A-2 (Modification Trial Plan), App. 8, ECF No. 15 (emphasis in original).

11

summarizes her alleged actual damages as the resultant increased legal time and expenses…but attorneys' fees and litigation costs are not 'damages,' they are merely punitive measures which may be available for the successful prosecution of a lawsuit."). Here, no foreclosure has occurred, Plaintiff continues to occupy the residence, and Plaintiff included only litigation costs and fees as damages in the petition. *See* Def.'s Not. Removal Ex. C-2 (Or. Pet.), ECF No. 1-5. Plaintiff cannot prove he has suffered actual damages—an essential element of a breach of contract claim. As such, the Court finds that PennyMac's motion should be and is hereby **GRANTED**.

IV. **CONCLUSION**

For the foregoing reasons, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 14), should be and is hereby **GRANTED.** The Court **DISMISSES** Plaintiff's claims **with prejudice.**

**SO ORDERED** on this **28th day** of **August, 2019**.

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE